IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN W. JACKSON and SECOND
AMENDMENT FOUNDATION, INC.,

      Plaintiffs,

vs.                                   No. 2:12-CV-00421-MCA-RHS

GORDEN E. EDEN,

      Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**THIS MATTER** is before the Court on *Plaintiffs' Motion for Permanent Injunction* [Doc. 44]. John W. Jackson and the Second Amendment Foundation, Inc. (Plaintiffs) seek to enjoin Gorden E. Eden[1] (Defendant), Cabinet Secretary of the New Mexico Department of Public Safety, and his officers, agents, servants and employees from enforcing the United States citizenship provision in the New Mexico Concealed Handgun Carry Act, NMSA 1978, Section 29-19-14(A)(1). In a *Memorandum Opinion and Order* dated March 30, 2013, the Court granted Plaintiffs' motion for a preliminary

---

[1] This case was originally filed against Gary King, in his official capacity as Attorney General of the State of New Mexico, and Bill Hubbard, in his official capacity as Director of the Special Investigations Division of the New Mexico Department of Public Safety. [See Doc. 1] On March 30, 2013, the Court granted Defendant King's motion to dismiss because "[t]he Department of Public Safety, not the Attorney General, is responsible for the administration and execution of the Concealed Handgun Carry Act, NMSA 1978, § 29-19-1, *et seq.*" [Doc. 41 at 4-5] On October 23, 2013, Defendant Hubbard moved for the substitution of Mr. Eden, in his official capacity as Cabinet Secretary of the New Mexico Department of Public Safety, as Defendant because Defendant Hubbard no longer held the position of Director of Special Investigations. [Doc. 50] The Court granted the motion and substituted Mr. Eden as the Defendant in this case. [Doc. 52]

1

injunction, concluding that Plaintiffs had demonstrated a substantial likelihood of success on the merits of their Fourteenth Amendment Equal Protection claim, because alienage is a suspect classification and Defendant had "failed to demonstrate a close fit between the citizenship requirement and the state's compelling interest in public safety." [Doc. 42 at 19] The Court further concluded that Plaintiffs would suffer irreparable harm in the absence of preliminary injunctive relief, that the harm to the Plaintiffs outweighed the harm to Defendant, that the issuance of a preliminary injunction would serve the public interest, and that the citizenship provision was severable from the remainder of the Act. [Doc. 42 at 19-21] Accordingly, the Court preliminarily enjoined Defendant "from enforcing the citizenship provision in Section 29-19-14(A)(1) of the Concealed Handgun Carry Act pending resolution of this action." [Doc. 42 at 24]

In a second *Memorandum Opinion and Order* dated September 17, 2013, the Court granted in part and denied in part Defendant's motion for summary judgment. [Doc. 46] The Court granted summary judgment in favor of Defendant on Plaintiffs' Second Amendment claim because "the concealed carrying of firearms is not protected by the Second Amendment." [Doc. 46 at 11] The Court also granted summary judgment in favor of Defendant on Plaintiffs' federal preemption claim because "nothing in the Act deprives lawful resident aliens of their ability to arm themselves for protection." [Doc. 46 at 21] However, the Court denied Defendant's motion for summary judgment on Plaintiffs' Equal Protection claim because Defendant had failed to demonstrate that the citizenship requirement was narrowly tailored to serve the Government's compelling

2

interest in public safety.  [Doc. 46 at 19]

On August 26, 2013, Plaintiffs filed *Plaintiffs' Motion for Permanent Injunction*, which seeks to permanently enjoin Defendant and his "officers, agents, servants, employees, and all persons in active concert or participation with [him] who receive actual notice of the injunction, from enforcing the United States citizenship requirement of NMSA 1978 § 29-19-4(A)(1) against Plaintiffs and/or their members" because it violates the Equal Protection Clause.[2]  [Doc. 44, 48]  Defendant responds that Plaintiffs' motion should be denied "because Plaintiffs have not actually prevailed on the merits" of their Equal Protection claim yet.  [Doc. 51 at 3]  Alternatively, Defendant responds that the citizenship provision "survives strict scrutiny analysis" because it is "narrowly tailored . . . [to] ensure[] that only persons who have undergone a complete and thorough background check receive a permit."  [Doc. 51 at 4]

On February 27, 2014, the Court convened a status conference with the parties. The Court inquired whether there was a need for further development of the factual record or whether the Court could decide *Plaintiffs' Motion for a Permanent Injunction* as a matter of law on the basis of the prior proceedings and the briefs.  The parties agreed that further evidence was not necessary and that the Court could resolve the motion as a matter of law on the basis of the prior proceedings and the briefs.  [Doc. 58]  Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court makes the following findings of fact and conclusions of law:

---

[2] Plaintiffs did not raise their Second Amendment or Preemption claims in their Motion for Permanent Injunction. [See Doc. 48 at 10]

3

## I.      FINDINGS OF FACT

1.      Pursuant to Article II, Section 6 of the New Mexico Constitution, all individuals may openly carry firearms in New Mexico, regardless of citizenship.  See N.M. Const. art II, § 6.

2.      Pursuant to NMSA 1978, Section 30-7-2(A), all individuals may carry a concealed loaded firearm in the following limited circumstances, regardless of citizenship: "in the persons' residence or on real property belonging to him as owner, lessee, or licensee" or "in a private automobile, or other private means of conveyance, for lawful protection of the person's or another's person or property."  See NMSA 1978, § 30-7-2(A)(1)-(2).

3.      In any other circumstance, carrying a loaded concealed firearm without "a valid concealed handgun license issued to him by the department of public safety pursuant to the provisions of the Concealed Handgun Carry Act" is a petty misdemeanor. See § 30-7-2(A)(5), (D).

4.      Under New Mexico law, only United States citizens are eligible to obtain a concealed handgun license.  See NMSA 1978, Section 29-19-4(A)(1).

5.      Plaintiff John W. Jackson is a citizen of Australia and a lawful permanent resident of the United States residing in Rio Rancho, New Mexico.  [See Doc. 19-1] Plaintiff Jackson is otherwise qualified to obtain a concealed handgun license, but for his citizenship status.  [Id.]  Because he is not a United States citizen, Plaintiff Jackson is prohibited from "obtaining a concealed carry permit, and thus carrying a handgun in a

4

concealed manner for self-defense." [Id.]

6.      Plaintiff Second Amendment Foundation, Inc. is a non-profit organization with more than 3000 members and supporters in New Mexico.  [Doc. 19-2]  Plaintiff Second Amendment Foundation, Inc., has "individual members and supporters who are adversely impacted by NMSA 1978, § 29-19-14(A)(1)" and "[b]ut for criminal enactments challenged in this complaint, SAF members who are legal aliens residing within New Mexico would obtain concealed carry permits and carry concealed firearms for their own defense." [Id.]

7.      Defendant Gordon E. Eden is the Cabinet Secretary of the New Mexico Department of Public Safety ("Department").  [Doc. 50]  The Department "is authorized to issue concealed handgun licenses to qualified applicants."  NMSA 1978, Section 29-19-3.

8.      Before issuing a concealed handgun license, the Department must "conduct an appropriate check of available records and . . . forward the applicant's fingerprints to the federal bureau of investigation for a national criminal background check."  NMSA 1978, Section 29-19-5(D).

9.      Pursuant to NMSA 1978, Section 29-19-4(B), the Department "shall deny a concealed handgun license to any applicant who has:

> (1) received a conditional discharge, a diversion or a deferment or has been convicted of, pled guilty to or entered a plea of nolo contendere to a misdemeanor offense involving a crime of violence within ten years immediately preceding the application;

5

> (2) been convicted of a misdemeanor offense involving
> driving while under the influence of intoxicating liquor or
> drugs within five years immediately preceding the application
> for a concealed handgun license;
>
> (3) been convicted of a misdemeanor offense involving the
> possession or abuse of a controlled substance within ten years
> immediately preceding the application; or
>
> (4) been convicted of a misdemeanor offense involving
> assault, battery or battery against a household member.

§ 29-19-4(B).

10.     "[I]n addition to other sources of information, some of the primary methods used to run background checks involve information obtained from the National Instant Crime Background Systems (NICS) and information obtained from the National Crime Information Computer System (NCIC)." [Doc. 31-1]

11.     Neither the NICS or NCIC databases contain information regarding disqualifying misdemeanor convictions, see § 29-19-4(B), committed in foreign jurisdictions by applicants for concealed handgun licenses.  [See Doc. 46 at 18]  This is true regardless of the citizenship of the applicant.

12.     Therefore, with respect to both citizens and permanent resident aliens alike, Defendant is unable to run adequate background checks "that encompass the ability to ascertain disqualifying convictions in a foreign jurisdiction." [Doc. 31-1]

13.     There is no additional evidence proffered to explain why the citizenship status of an applicant for a concealed handgun license is necessary to further the State's compelling interest in public safety.

6

## II.   CONCLUSIONS OF LAW

1.    "For a party to obtain a permanent injunction, it must prove: (1) actual

success on the merits; (2) irreparable harm unless the injunction is issued; (3) the

threatened injury outweighs the harm that the injunction may cause the opposing party;

and (4) the injunction, if issued, will not adversely affect the public interest.  This

standard is remarkably similar to the standard for a preliminary injunction. The only

measurable difference between the two is that a permanent injunction requires showing

actual success on the merits, whereas a preliminary injunction requires showing a

substantial likelihood of success on the merits." Prairie Band  Potawatomi Nation v.

Wagnon, 476 F.3d 818, 822 (10th Cir. 2007) (internal quotation marks and citation

omitted).

2.    The Equal Protection Clause of the Fourteenth Amendment of the United

States Constitution provides that "[n]o State . . . shall deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Equal

protection "is essentially a direction that all persons similarly situated should be treated

alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

3.    Governmental classifications are subject to strict scrutiny under the Equal

Protection Clause if they burden a fundamental right or target a suspect class.  Save

Palisade FruitLands v. Todd, 279 F.3d 1204, 1210 (10th Cir. 2002).  "To survive strict

scrutiny, the government must show that its classification is narrowly tailored to achieve

a compelling government interest." KT.& G Corp v. Attorney General of State of Okla.,

7

535 F.3d 1114, 1137 (10th Cir. 2008).

      4.      Alienage is a suspect classification and state statutes that discriminate on the basis of alienage are subject to strict scrutiny.  See Graham v. Richardson, 403 U.S. 365, 371-72 (1971) (holding that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority . . . for whom such heightened judicial solicitude is appropriate") (citation and footnotes omitted); Soskin v. Reinertson, 353 F.3d 1242, 1254 (10th Cir. 2004) (recognizing that "Supreme Court precedents establish . . . [that] states on their own cannot treat aliens differently from citizens without a compelling justification").

      5.      New Mexico's Concealed Handgun Carry Act discriminates on the basis of alienage and, therefore, strict scrutiny applies.  See United States v. Huitron-Guizar, 678 F.3d 1164, 1170 (10th Cir. 2012) (recognizing that "[r]ecently some state statutes that burden gun possession by lawful permanent aliens . . . have been declared invalid under the Equal Protection Clause, which requires that strict scrutiny be applied to state laws that impose restrictions based on alienage.").

      6.      Defendant has a compelling interest in protecting the public from the dangers posed by concealed firearms.  See Kachalsky v. County of Westchester, 701 F.3d 81, 97 (2d Cir. 2012) (holding that the states have a "substantial, indeed compelling, government interest[] in public safety and crime prevention"); Fletcher v. Haas, 851 F. Supp. 2d 287, 303 (D. Mass. 2012) (recognizing that Massachusetts "has an interest in

regulating firearms to prevent dangerous persons from obtaining firearms").

7.       "The purpose of the narrow tailoring requirement is to ensure that 'the

means chosen "fit" th[e] compelling goal so closely that there is little or no possibility

that the motive for the classification was illegitimate . . . prejudice or stereotype.'"

Grutter v. Bollinger, 539 U.S. 306, 333 (2003) (quoting Richmond v. J.A. Croson Co.,

488 U.S. 469, 493 (1989) (plurality opinion)).

8.       There is no argument made, much less any evidence proffered, that

permanent resident aliens who reside in this country legally pose a greater danger when

carrying a concealed loaded firearm than do United States citizens.  Indeed, "[a]ny

classification which treats all aliens as dangerous and all United States citizens as

trustworthy rests upon a very questionable basis."  People v. Rappard, 28 Cal. App. 3d

302, 305 (Cal. Ct. App. 1972); see also Fletcher, 851 F.Supp.2d at 303 ("Any

classification based on the assumption that lawful permanent residents are categorically

dangerous and that all American citizens by contrast are trustworthy lacks even a

reasonable basis.").

9.       The Court rejects Defendant's argument that the citizenship provision in the

Concealed Handgun Carry Act is narrowly tailored "because it ensures that only persons

who have undergone a complete and thorough background check receive a permit."

[Doc. 51 at 4]  With respect to both citizens and permanent resident aliens alike,

Defendant is unable to determine whether the applicant has been convicted of a

disqualifying misdemeanor conviction in a foreign jurisdiction.  Yet, United States

citizens who have traveled or lived abroad are not denied such licenses due to
Defendant's inability to run a complete and thorough background check.  Therefore, the
Court concludes that the citizenship requirement is not narrowly tailored to serve the
Government's compelling interest in public safety.  See Smith v. South Dakota, 781 F.
Supp. 2d 879, 886-87 (D. S.D. 2011) (holding that the citizenship requirement in South
Dakota's concealed carry statute was not narrowly tailored to achieve a compelling
governmental interest, even though the state's background check, Triple I, only covered
crimes committed in the United States because "the Triple I's effectiveness does not
depend on whether the crime is committed by a United States citizen" and "[i]f the Triple
I background check is sufficient to achieve the state's interests with regard to United
States citizens who may or may not be dangerous or otherwise unsuitable for a permit,
then the Triple I background check is also sufficient with regard to [the plaintiff] in light
of his extended residency in the United States").

10.     The Court concludes that the citizenship provision in Section 29-19-
4(A)(1) violates the Equal Protection Clause of the United States Constitution as applied
to permanent resident aliens, like Plaintiff Jackson, who are otherwise qualified to
obtained a concealed handgun license.  Accordingly, Plaintiffs have prevailed on the
merits of their Equal Protection claim.

11.     "When an alleged constitutional right is involved, most courts hold that no
further showing of irreparable injury is necessary."  Kikumura v. Hurley, 242 F.3d 950,
963 (10th Cir. 2001) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 2948.1 (2d ed.1995)); see also Heideman v. South Salt Lake City, 348 F.3d 1182, 1189-90 (10th Cir. 2003) (holding that the plaintiffs had established irreparable harm because the statute at issue deprived them of their First Amendment Rights).  In light of Plaintiffs' constitutional injury, the Court concludes that Plaintiffs will suffer irreparable harm in the absence of permanent injunctive relief.

12.     Plaintiffs have demonstrated that the continued enforcement of the citizenship requirement in New Mexico's Concealed Handgun Carry Act violates their right to equal protection of the laws and constitutes an irreparable harm.  Thus, the harm to Plaintiffs is significant.  In contrast, the harm to Defendant, if any, is minimal.  The risk posed by the inability to conduct a complete and thorough background check for disqualifying misdemeanor convictions in foreign jurisdictions is equally applicable to both citizens and permanent resident aliens alike.  If the NICS and NCIS background checks are sufficient to protect the Government's compelling interest in public safety with respect to citizens, then it is also sufficient with respect to permanent resident aliens, like Plaintiff Jackson.  Accordingly, the Court concludes that the balance of the harms factor supports the issuance of permanent injunctive relief.

13.     Defendant does "not have an interest in enforcing a law that is . . . constitutionally infirm."  Chamber of Commerce of the United States  v. Edmondson, 594 F.3d 742, 771 (10th Cir. 2010).  Additionally, "it is always in the public interest to prevent the violation of a party's constitutional rights."  Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012) (internal quotation marks and citation omitted); see also Chamber

11

of Commerce of the United States, 594 F.3d at 771 (holding that "the public interest will

perforce be served by enjoining the enforcement of the invalid provisions of state law."

(internal quotation marks and citation omitted)).  Thus, the public interest is served by

granting Plaintiffs' request for permanent injunctive relief.

14.   "[A] court sustaining an equal protection challenge has 'two remedial

alternatives: it may either declare the statute a nullity and order that its benefits not

extend to the class that the legislature intended to benefit, or it may extend the coverage

of the statute to include those who are aggrieved by the exclusion.'" Petrella v.

Brownback, 697 F.3d 1285, 1296 (10th Cir. 2012) (quoting Heckler v. Mathews, 465

U.S. 728, 738 (1984)).  "In order to determine whether partial invalidation of a state

statute is appropriate, federal courts look to state law." Citizens for Responsible Gov't

State Political Action Comm. v. Davidson, 236 F.3d 1174, 1195 (10th Cir. 2000); see

Leavitt v. Jane L., 518 U.S. 137, 139 (1996) ("Severability is of course a matter of state

law.") (per curiam).

15.   "It is well established in [New Mexico] that a part of a law may be invalid

and the remainder valid, where the invalid part may be separated from the other portions,

without impairing the force and effect of the remaining parts, and if the legislative

purpose as expressed in the valid portion can be given force and effect, without the

invalid part, and, when considering the entire act it cannot be said that the legislature

would not have passed the remaining part if it had known that the objectionable part was

invalid." Bradbury & Stamm Const. Co. v. Bureau of Revenue, 372 P.2d 808, 811 (N.M.

12

1962).  However, the Court "cannot rewrite or add language to a statute in order to make it constitutional."  State v. Frawley, 172 P.3d 144, 155 (N.M. 2007).

16.     The Court concludes that the citizenship requirement in subsection (1) of Section 29-19-4(A) may be severed without impairing the remainder of the Act's force and effect.  If subsection (1) is removed, the statute nonetheless provides for the issuance of a concealed handgun license to an applicant who satisfies the remainder of the statutory requirements, subsections (2) through (10).  Because the severance of subsection (1) "in no way affects the enforceability of the other portions of the statute," Bradbury & Stamm Const. Co., 372 P.2d at 814, the first prong of the severability test is satisfied.

17.     Severance of the citizenship provision also will not impair the legislative purpose as expressed in the remainder of the Act.  The manifest purpose of the Act is to permit the issuance of "concealed handgun licenses to qualified members of the public who satisfy the requisite education and training."  New Mexico Voices for Children v. Denko, 90 P.3d 458, 459 (N.M. 2004).  Severance of the citizenship provision will not impair this purpose, nor will it require the issuance of concealed handgun licenses to illegal aliens.  Section 29-19-4(A)(7) of the Act prohibits the issuance of concealed handgun licenses to applicants who are "otherwise prohibited from federal law or the law of any other jurisdiction from purchasing or possessing firearms."  Title 18 of the United States Code, Section 922(g)(5) prohibits any person who "is illegally or unlawfully in the United States" from "ship[ping] or transport[ing] in interstate or foreign commerce, or

13

possess[ing] in or affecting commerce, any firearm or ammunition; or [receiving] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." See Huitron-Guizar, 678 F.3d at 1170 (10th Cir. 2012) (upholding the constitutionality of Section 922(g)(5)). Because illegal aliens are prohibited from purchasing or possessing firearms under federal law, they are not eligible to obtain a concealed handgun license under the Concealed Handgun Carry Act. Accordingly, the second prong of the severability test weighs in favor of severance.

18.     The foregoing analysis is also dispositive of the third prong of the severance test, namely, whether the legislature would have passed the Act if it had known that the citizenship provision was unconstitutional. "Because the Legislature did not articulate a specific purpose in the Act, we look to the entire Act to ascertain whether the Legislature would have passed the Act if it had known that" the citizenship provision was unconstitutional. Baca v. New Mexico Dep't of Public Safety, 47 P.3d 444, 445 (N.M. 2005) (per curiam). As previously explained, severance of the citizenship provision preserves the legislative purpose of the Act and does not require the issuance of concealed handgun licenses to illegal aliens. Considering the Act as a whole, the Court concludes that the Legislature would have passed the Act if it had known that the citizenship provision was unconstitutional.

19.     The Court concludes that the proper remedy for the alleged Equal Protection violation is to sever the citizenship provision in Section 29-19-14(A)(1) from the remainder of the Concealed Handgun Carry Act.

20.     *Plaintiffs' Motion for Permanent Injunction* [Doc. 44] will be granted in a separate judgment.

21.     Plaintiffs' request for declaratory and permanent injunctive relief on Count I of his *Complaint* [Doc. 1], violation of the Equal Protection Clause of the United States Constitution, will be granted in a separate judgment.

**Entered this 31st day of March, 2014 in Albuquerque, New Mexico.**

_____
M. CHRISTINA ARMIJO
Chief United States District Judge

15