IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-cv-00369-BO

FELICITY M. TODD VEASEY and
SECOND AMENDMENT
FOUNDATION, INC.,
         Plaintiffs,

v.

BRINDELL B. WILKINS, JR., in his
official capacity as Sheriff of Granville
County, North Carolina

         Defendant.

MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS

Pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1, Defendant Brindell B. Wilkins, Jr., ("Sheriff Wilkins") respectfully moves the Court for an Order dismissing the Complaint of Plaintiffs Felicity M. Todd Veasey ("Veasey") and the Second Amendment Foundation, Inc. ("SAF").

## INTRODUCTION

The Complaint challenges the constitutionality of North Carolina's regulatory scheme for concealed carry permits. Rather than sue the State or its appropriate official, however, Plaintiffs have sued one of the 100 local sheriffs charged with enforcing this State law. Plaintiffs fail to appreciate that 42 U.S.C. § 1983 does not sanction this practice.

A Section 1983 plaintiff cannot identify a State law that is unconstitutional, single out one of the local officials charged with enforcing it, bring a lawsuit against that local official, and expect to have his attorney's fees paid by the County under 42 U.S.C. § 1988, the fee-shifting statute for Section 1983 claims. When plaintiffs challenge the constitutionality of a State law under Section 1983, they have two options: (1) bring a declaratory judgment action against an



alleges that the laws being challenged "were enacted in the State capital in this District," *id.* at ¶ 7, and alleges that it is "the laws of North Carolina" – and not Granville County – that prohibit Plaintiffs from obtaining a permit, *id.* at ¶ 3.

## STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must present "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

**I. SECTION 1983 DOES NOT PERMIT PLAINTIFFS TO CHALLENGE THE CONSTITUTIONALITY OF A STATE STATUTE BY SUING ONE OF THE 100 LOCAL SHERIFFS WHO ARE REQUIRED TO ENFORCE IT.**

Under the U.S. Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local government officials can only be sued under Section 1983 when they are acting pursuant to the local government's "policy or custom." *See id.* at 694; *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that this requirement applies to Section 1983 actions against local officials "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official," and therefore "the entity's policy or custom must have played a part in the violation of federal law"); *L.A. County v. Humphries*, 562 U.S. 29, 451 (2010) (holding that the local "policy or custom" requirement applies to Section 1983 lawsuits where, as here, the plaintiff seeks prospective injunctive relief as opposed to damages).

Therefore, as the Fourth Circuit and other Circuits have made clear, a local government official cannot be held liable under Section 1983 for merely enforcing State law because this

does not constitute a "policy or custom" of the local government. *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993), *cert. denied*, 510 U.S. 1092 (1993); *Vives v. City of New York*, 524 F.3d 346, 351-352 (2d Cir. 2008) (summarizing decisions and noting that the Fourth Circuit in *Bockes*, as well as the Seventh, Ninth, Tenth, and Eleventh Circuits, are all in agreement that local governments cannot be held liable for merely enforcing mandatory state law over which they have no discretion); Schwartz & Kirklin, *Section 1983 Litigation: Claims and Defenses*, § 7.09 at 7-57 (citing *Bockes* as one of many decisions holding that "[t]he mere fact that a municipality enforces state law does not justify the imposition of Section 1983 municipal liability"); *see also, e.g.*, *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000) (holding that local government officials "cannot be liable for merely implementing a policy created by the State"); *West v. Congemi*, 28 F. Supp. 2d 385, 394-95 (E.D. La. 1998) (summarizing decisions and noting that "[t]he Fifth Circuit has long recognized that simply following the mandatory dictates of state law cannot form a predicate for *Monell* liability").

This well-settled aspect of Section 1983 jurisprudence rests on two important policies. First, it faithfully tracks the U.S. Supreme Court's decision in *Monell*. *See, e.g.*, *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("If the language and standards from *Monell* are not to become a dead letter, such a 'policy' [of enforcing state law] simply cannot be sufficient to ground liability against a municipality."). Second, it "has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government." *See, e.g.*, *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998).

Thus, in *Bockes*, the Fourth Circuit held that a county in Virginia could not be liable under Section 1983 for merely enforcing Virginia state law. *Bockes* at 791. There, the County

5

had fired an employee pursuant to termination procedures and criteria that were prescribed by the State. Even though the State procedures allowed the County Board some degree of discretion, the Fourth Circuit held that there could be no Section 1983 liability under *Monell*. *Id.* As the Court explained:

> The district court found the Board's firing of Ms. Bockes to represent the 'official policy' of Grayson County, because the County had the power to hire and fire the members of the Board. The County argues that this analysis is misfocused, because the Commonwealth, not the County, sets personnel policy for the Board.
>
> We agree with the County. . . . In Virginia, neither the County nor the local boards have authority to set 'general goals and programs' for social services personnel; that authority is reserved for the State Board. *See* Va. Code §§ 63.1-26. The State Board has wielded this authority by publishing a comprehensive personnel handbook, which the local boards must follow. Among other things, this handbook requires the local boards to apply merit criteria in their personnel decisions. It even prescribes the grievance procedure that Ms. Bockes used in this case. In short, the Grayson County Board enjoyed its discretion to fire Ms. Bockes at the prerogative of and within the constraints imposed by the Commonwealth. Such bounded, state-conferred discretion is not the 'policymaking authority' for which a county may be held responsible under § 1983.

*Id.*

Here, the Plaintiffs' lawsuit is even more unfounded than the action rejected by the Fourth Circuit in *Bockes*. At least in *Bockes* the plaintiffs had a good faith argument that because State law gave the county some degree of discretion, the county was involved in a "policymaking" decision under *Monell*. Even then, the Fourth Circuit had little difficulty rejecting that argument. Here, the Complaint does not even allege that Sheriff Wilkins has any discretion to exercise in the decision of whether to issue a permit. Indeed, under North Carolina law, he does not.

As the Complaint admits, the State's comprehensive regulatory scheme for concealed carry permits requires local sheriffs to apply certain eligibility criteria. Complaint at ¶ 16

(admitting that Sheriff Wilkins is the "authority charged [by the State] with processing and issuing concealed carry permit applications" and is merely "responsible for enforcing certain of North Carolina's laws, customs, practices, and policies, specifically including N.C. Gen. Stat. § 14-415.12(a)(1)"); *see generally* N.C. Gen. Stat. § 14-415.10, et seq. One of these criteria is that the applicant must be a U.S. citizen. N.C. Gen. Stat. § 14-415.15(a) (listing "citizenship" as the first of various "criteria"). If the applicant is not a U.S. citizen, then State law *requires* the sheriff to deny the permit. *See* N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] if the applicant fails to qualify under the criteria listed in this Article").

Just as Sheriff Wilkins has no choice in the matter, Plaintiffs' failure to sue the proper party results in a similar dilemma: Sheriff Wilkins has no option for resolving this case through settlement. Sheriff Wilkins cannot issue concealed carry permits to non-U.S. citizens without violating State law, and even then, a stipulation to do so would be of questionable validity given that it is directly contrary to the express law and clear public policy of North Carolina. *See RL REGI N.C., LLC v. Lighthouse Cove, LLC*, No. 427PA13, 2014 N.C. LEXIS 587, 7-8 (N.C. Aug. 20, 2014) (stating the well-settled rule that "[a] contract which on its face involves illegal conduct will not be enforced"); *Cansler v. Penland*, 125 N.C. 578, 579, 34 S.E. 683, 684 (1899) (holding that a contract in which a sheriff authorized another to exercise certain duties of the sheriff was inherently illegal and unenforceable); *see also* N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] if the applicant fails to qualify under the criteria listed in this Article"). In addition, a decision by one County in North Carolina to stop enforcing State law that is enforced in the other 99 Counties would violate N.C. Gen. Stat. § 14-415.23 ("Statewide uniformity"), which prohibits any local "rules . . .

concerning legally carrying a concealed handgun." *Id.* (providing that "[i]t is the intent of the General Assembly to prescribe a uniform system for the regulation of legally carrying a concealed handgun"). As described above, Section 1983 does not allow plaintiffs to extort local governments by putting them "at war with state government" in this manner. *Leean*, 154 F.3d at 718.

Moreover, settling this case with the Plaintiffs would render them "prevailing parties" under Section 1988. This would lead to a fundamentally unfair result in which the citizens of Granville County would be forced to pay Plaintiffs' attorneys' fees out of the County's general fund simply because their Sheriff complied with laws that the North Carolina General Assembly mandated him to follow. No decision of the U.S. Supreme Court or Fourth Circuit provides for local governments to be punished in this manner for properly respecting their subordinate status.

In sum, Sheriff Wilkins' mandatory compliance with State law does not give rise to Section 1983 liability under well-settled law. Plaintiffs may sue the State or its appropriate official, but they may not sue the local sheriff under Section 1983 for merely enforcing State law. The Complaint should be dismissed in its entirety on these grounds alone.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN THE STATE AS A NECESSARY PARTY.

Rule 19 of the Federal Rules of Civil Procedure provides:

(a) Persons Required to Be Joined if Feasible

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest.

Fed. R. Civ. P. 19(a)(1)(B)(i).

prohibitions against carrying concealed weapons"). Accordingly, N.C. Gen. Stat. § 14-415.12 does not implicate Second Amendment rights as a matter of law.

For this additional reason, Plaintiffs' Second Amendment challenge (Count 2) should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Sheriff Wilkins respectfully requests that the Court dismiss the Complaint.

Respectfully submitted the 24th day of September, 2014.

| **HOPPER HICKS & WRENN, PLLC** | **POYNER SPRUILL LLP** |
|---|---|
| By: s/ James C. Wrenn, Jr.<br>James C. Wrenn, Jr.<br>Granville County Attorney<br>N.C. State Bar No. 29528<br>jcw@hopperhickswrenn.com<br>111 Gilliam Street<br>Oxford, NC 27565<br>Telephone: 919.693.8161<br>Facsimile: 919.693.9938<br><br>COUNSEL FOR DEFENDANT | By: s/ Andrew H. Erteschik<br>Andrew H. Erteschik<br>N.C. State Bar No. 35269<br>aerteschik@poyners.com<br>P.O. Box 1801<br>Raleigh, NC 27602-1801<br>Telephone: 919.783.2895<br>Facsimile: 919.783.1075<br><br>ATTORNEYS FOR DEFENDANTS |

13

Case 5:14-cv-00369-BO   Document 15   Filed 09/24/14   Page 13 of 14

Case 5:15-cv-00097-BO   Document 19-1   Filed 04/01/15   Page 7 of 8

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

>David G. Sigale
>Law Firm of David G. Sigale, P.C.
>739 Roosevelt Road, Suite 304
>Glen Ellyn, IL 60137
>dsigale@sigalelaw.com
>
>Camden R. Webb
>Williams Mullen
>301 Fayetteville Street, Suite 1700
>Raleigh, NC 27601
>crwebb@williamsmullen.com

This the 24th day of September, 2014.

>s/Andrew H. Erteschik
>Andrew H. Erteschik