IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-cv-00369-BO

FELICITY M. TODD VEASEY and
SECOND AMENDMENT
FOUNDATION, INC.,
              Plaintiffs,

v.

BRINDELL B. WILKINS, JR., in his
official capacity as Sheriff of Granville
County, North Carolina

              Defendant.

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Pursuant to Local Civil Rule 7.1, Defendant Brindell B. Wilkins, Jr. ("Sheriff Wilkins") submits the following Reply in support of his Motion to Dismiss the Complaint of Plaintiffs Felicity M. Todd Veasey ("Veasey") and the Second Amendment Foundation, Inc. ("SAF").

## ARGUMENT

**I. PLAINTIFFS' RESPONSE ONLY UNDERSCORES WHY THEY CANNOT CHALLENGE THE CONSTITUTIONALITY OF A STATE STATUTE BY SUING ONE OF THE 100 LOCAL SHERIFFS WHO ARE REQUIRED TO FOLLOW IT.**

In his opening brief, Sheriff Wilkins outlined how well-settled Section 1983 jurisprudence prohibits a plaintiff from suing a local official for merely following state law. Plaintiffs have responded with arguments that only prove Sheriff Wilkins' points with even greater force.

First, Plaintiffs contend that they do not need to identify a "policy or custom" under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), because this requirement is "limited to cases involving vicarious liability" (i.e., suits against the local government entity) and does not apply to official-capacity suits such as this. [DE 23 at 5]. Plaintiffs are wrong. It is black-letter law


EXHIBIT B

that *Monell*'s local "policy or custom" requirement applies to official capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also, e.g.*, *Robertson v. Elliott*, 315 Fed. Appx. 473, 476 (4th Cir. 2009) (citing *Graham* at 166); *O'Connell v. City of Greenville*, 2014 U.S. Dist. LEXIS 127264, at *4 (E.D.N.C. Sept. 10, 2014) (Boyle, J.) (quoting *Graham*, 473 U.S. at 166) ("[I]n an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.").

Next, Plaintiffs argue that *Bockes v. Fields*, 999 F.2d 788, 791 (4th Cir. 1993), *cert. denied*, 510 U.S. 1092 (1993), is distinguishable because "the 'local' board that enjoyed Eleventh Amendment immunity in *Bockes* was subject to complete control by the state," and "[t]herefore, when the *Bockes* Court spoke of the local board being constrained by state law and therefore not liable under 1983, it was applying that principle to a state-controlled entity." [DE 23 at 6]. But Sheriff Wilkins is not arguing that he is entitled to the same relief as the state-controlled local board in Bockes. He is arguing that he is entitled to the same relief as the county in *Bockes*. Plaintiffs are apparently confused about who the defendants were in *Bockes* and how the Fourth Circuit ruled as to each of those defendants.

There were three defendants in *Bockes*: the Grayson County Board of Social Services (the "Board"), the Grayson County Department of Social Services (the "Department"), and Grayson County. "The Board and the Department maintained that they were immune from suit in federal court because they were state entities under the Eleventh Amendment." *Id.* at 789-90. By contrast, Grayson County argued what Sheriff Wilkins argues here: that under *Monell's* local "policy or custom" requirement, a Section 1983 plaintiff cannot sue a local government or its officials for merely enforcing State law. *Id.*

2

Case 5:14-cv-00369-BO   Document 25   Filed 11/14/14   Page 2 of 11

Case 5:15-cv-00097-BO   Document 19-2   Filed 04/01/15   Page 2 of 8

The Fourth Circuit agreed with the Board and the Department's arguments that they were "state agencies" and therefore entitled to dismissal under the Eleventh Amendment. *Id.* at 790-91. The Circuit then turned to a consideration of the third defendant, Grayson County. As explained in detail in Sheriff Wilkins' opening brief, the Fourth Circuit held that Section 1983 could not impose liability on Grayson County for following state law because this could not – as a matter of law – constitute a local "policy or custom" under *Monell*. Thus, Plaintiffs' comments about the state-controlled Board in *Bockes* are puzzling because they have nothing to do with the Court's decision or rationale with respect to Grayson County. *Bockes* is directly on point, and Plaintiffs' attempt to distinguish it fails.[1]

Next, Plaintiffs attempt to distance themselves from the allegations of their Complaint by suggesting that they are not really suing over a "State policy" and are instead suing over a "local Granville County policy." As an initial matter, this argument is impossible to accept in light of the Complaint's allegations, which make clear that Plaintiffs are challenging North Carolina's statewide mandatory regulatory scheme for concealed carry permits. The Complaint alleges that Plaintiffs are seeking an injunction to enjoin "the State of North Carolina's prohibition . . . pursuant to N.C. Gen. Stat. § 14-415.12(a)(1)" [DE 1 at ¶ 1], challenging "the State's ban on non-citizens obtaining a concealed carry license" [*Id.* at ¶ 4], challenging laws that "were enacted in the State capital in this District" [*Id.* at ¶ 7], and challenging "the laws of North Carolina." [*Id.* at ¶ 3]. More recently, Plaintiffs' Memorandum in Support of their Motion for Preliminary

---

[1] Plaintiffs also argue that an outdated New Jersey district court decision, *Davis v. Camden*, 657 F. Supp. 396 (D. N.J. 1987), is "more instructive" than the Fourth Circuit's decision in *Bockes*. [DE 23, 4-5, 7]. *Davis* reached its aberrational result nearly thirty years ago when there was "little authority on the issue." *Id.* at 402. In the nearly thirty years since, however, there is ample authority on the issue. Every federal circuit to consider the issue – including the Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits – has reached the opposite result. [DE 23, 4-5, 7].

Injunction doubles down on this theory. Plaintiffs contend that it is North Carolina's "Code [sic] sections" that "prohibit Veasey and *all other legal aliens residing in North Carolina* from obtaining a concealed carry permit," that "[i]t is unclear what *North Carolina's claimed purpose was for enacting this prohibition*," and that "there is no purpose *North Carolina* can offer that passes constitutional muster." [DE 21 at 3] (emphasis added). Plaintiffs also go into a lengthy discussion of *the State's* interest – as opposed to Granville County's interest – in the statute. [*Id.* at 20]. Plaintiffs also contend that "[i]n Wilkins's official capacity, he is responsible for enforcing certain of *North Carolina's . . . customs . . . and policies*, specifically including N.C.G.S. § 14-415.12(a)(1)." [*Id.* at 4] (emphasis added). Sheriff Wilkins could not have said it any better: the "policy or custom" at issue is a North Carolina "policy or custom," not a local "policy or custom" unique to Granville County.

Nevertheless, in a futile effort to identify the requisite "local policy or custom," Plaintiffs point to the lone fact that the Granville County government website posts a list of requirements for concealed carry permit applicants. [DE 23-1, Exhibit A]. But this posting is a ***verbatim list of the North Carolina statutory requirements***. *Compare id.* (stating that an applicant "must be a citizen of the United States"), *with* N.C. Gen. Stat. § 14-415.12(a)(1) (stating that an applicant must be "a citizen of the United States"). Thus, Plaintiffs' reference to the County's website as "a formal local policy" that "was promulgated by the Sheriff's department, separately and independently of any action by the State of North Carolina" cannot be taken seriously. [DE 23 at 3, 6].

Moreover, Plaintiffs cite no authority for the notion that a local government's verbatim posting of State statutory requirements on its website somehow transforms that "State policy or custom" into a local "policy or custom" under *Monell*. This is because no such authority exists.

4

On its face, that innocuous act alone could never satisfy the "stringent substantive standards" for recovery based upon the existence of a "local policy or custom." *Spell v. McDaniel*, 824 F.2d 1380, 1391, 1399 (4th Cir. 1987) (noting that "the substantive requirements for establishing . . . liability [under *Monell*] are stringent indeed").

Next, Plaintiffs suggest that they are entitled to "delve into whether the Sheriff had a 'meaningful choice' regarding enforcement" of State law. [DE 23 at 6]. This attempt to stave off dismissal is wrong for two reasons. First, it is well-settled that Section 1983 claims must be dismissed at the Rule 12 stage when, as here, the plaintiffs fail to adequately plead or identify a local "policy or custom" under *Monell*. *Walker v. Prince George's County,* 575 F.3d 426, 431 (4th Cir. 2009) (O'Connor, J., sitting by designation) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and affirming district court's Rule 12 dismissal for failure to adequately plead a local "policy or custom" under *Monell*); *see also, e.g.*, *Fordham v. Doe*, 2011 U.S. Dist. LEXIS 121389, at *1 (E.D.N.C. 2011); *Evans v. Griess*, 2013 U.S. Dist. LEXIS 152322, at *9 (E.D.N.C. 2013); *Harris v. Knuckles*, 2011 U.S. Dist. LEXIS 80540, at *5 (E.D.N.C. 2011); *McMillian v. Leconey*, 2010 U.S. Dist. LEXIS 61119, at *3-4 (E.D.N.C. 2010). Second, the Complaint does not and could not allege that Sheriff Wilkins had a "meaningful choice" because North Carolina's General Statutes clearly state that he does <u>not</u> as a matter of law. If an applicant is not a U.S. citizen, State law provides that Sheriff Wilkins "*shall*" deny them a permit. *See* N.C. Gen. Stat. § 14-415.15(a) (listing "citizenship" as the first of various "criteria"); N.C. Gen. Stat. § 14-415.15(c) (requiring that the "application for a permit *shall* be denied [by the sheriff] only if the applicant fails to qualify under the criteria listed in this Article") (emphasis added). This is not a question of fact; it is a pure legal issue that is definitively answered by North Carolina's General Statutes.

5

Finally, Plaintiffs cite the New Jersey district court's decision in *Davis* and a Missouri district court decision, *Snider v. Peters*, 928 F. Supp. 2d 1113 (E.D. Mo. 2013), as examples of a federal court rejecting a local official's defense that he was merely following state law. As Plaintiffs' admit, however, both of these decisions rejected this defense with respect to a *personal capacity suit*, as opposed to an official capacity suit. Plaintiffs here have not brought a personal capacity suit against Sheriff Wilkins; they have only brought an official capacity suit against him. This is a critical distinction because personal capacity suits – unlike official capacity suits – do not require a plaintiff to identify a local "policy or custom" under *Monell*. *See, e.g.*, *Hafer* at 25 (explaining that "the plaintiff in a personal-capacity suit need not establish a connection to [a local] governmental 'policy or custom'"). That is why in both *Davis* and *Snider*, the absence of a local "policy or custom" did not preclude the plaintiffs' personal capacity claims; that requirement was simply inapplicable. Indeed, when the district court in *Snider* considered the plaintiffs' official capacity claims, it *dismissed* them for a reason similar to the reason that Plaintiffs' claims fail here: there was no local "policy or custom" because it was the State of Missouri, and not the local government, that was responsible for the challenged training program curriculum. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (affirming district court's decision on these grounds). Thus, Plaintiffs' reliance on these decisions only highlights the flaw in its claims.

For all of the foregoing reasons, Plaintiffs' Response underscores why the Complaint should be dismissed.

6

Case 5:14-cv-00369-BO   Document 25   Filed 11/14/14   Page 6 of 11

Case 5:15-cv-00097-BO   Document 19-2   Filed 04/01/15   Page 6 of 8

Respectfully submitted the 14th day of November, 2014.

| **HOPPER HICKS & WRENN, PLLC** | **POYNER SPRUILL LLP** |
|---|---|
| By: s/ James C. Wrenn, Jr.<br>James C. Wrenn, Jr.<br>Granville County Attorney<br>N.C. State Bar No. 29528<br>jcw@hopperhickswrenn.com<br>111 Gilliam Street<br>Oxford, NC 27565<br>Telephone: 919.693.8161<br>Facsimile: 919.693.9938<br><br>**COUNSEL FOR DEFENDANT** | By: s/ Andrew H. Erteschik<br>Andrew H. Erteschik<br>N.C. State Bar No. 35269<br>aerteschik@poyners.com<br>P.O. Box 1801<br>Raleigh, NC 27602-1801<br>Telephone: 919.783.2895<br>Facsimile: 919.783.1075<br><br>**COUNSEL FOR DEFENDANT** |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record as follows:

> David G. Sigale
> Law Firm of David G. Sigale, P.C.
> 739 Roosevelt Road, Suite 304
> Glen Ellyn, IL 60137
> dsigale@sigalelaw.com
>
> Camden R. Webb
> Williams Mullen
> 301 Fayetteville Street, Suite 1700
> Raleigh, NC 27601
> crwebb@williamsmullen.com

This the 14th day of November, 2014.

> s/Andrew H. Erteschik
> Andrew H. Erteschik