IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:15-CV-97-BO

| | |
|---|---|
| KIRSTEN MESSMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DONNIE HARRISON in his official ) | |
| Capacity as Sheriff of Wake County, North ) | |
| Carolina, *et al.* ) | |
| Defendants. ) | |

This matter is before the Court on plaintiff's motion for preliminary injunction [DE 2]. A hearing was held before the undersigned on April 16, 2015, at 2:00 pm in Raleigh, North Carolina. For the following reasons, plaintiff's motion is GRANTED.

## BACKGROUND

Plaintiff Kirsten Messmer filed suit in this Court against the Sheriff of Wake County, North Carolina (the Sheriff), Governor Pat McCrory, Roy Cooper, the Attorney General, and Frank Perry, the Secretary of the Department of Public Safety, via 42 U.S.C. § 1983. Ms. Messmer is a German citizen who is a legal permanent resident of the United States currently residing in Wake Country, North Carolina. Plaintiff alleges that North Carolina General Statute § 14.415–12—which requires a person to demonstrate American citizenship prior to obtaining a concealed carry permit—violates the Second and Fourteenth Amendments to the United States Constitution. In North Carolina, each county's Sheriff's Office is the issuing authority for concealed carry permits within its county.

DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). A movant must make a clear showing of each of four elements before a preliminary injunction may issue: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Plaintiff has demonstrated that she is entitled to a preliminary injunction in this instance. In pertinent part, the Second Amendment states that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has stated that "the people" in refers to "persons who are part of a national community or who have otherwise developed sufficient connections with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990). The Fourteenth Amendment guarantees all persons equal protection of the law. U.S. Const. amend. XIV. State action violates the Fourteenth Amendment if it separates individuals into discrete classes based on citizenship and subjects those individuals to disparate treatment. *Graham v. Richardson*, 403 U.S. 365, 371, 377 (1971). The Fourteenth Amendment "encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Id.* at 371.

It is abundantly clear that resident aliens possess many of the same Constitutional rights as citizens in a variety of other situations. *See, e.g., Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953) (explaining that a resident alien is a "person" within the meaning of the Fifth Amendment); *Bridges v. Wixon*, 326 U.S. 135, 161–62 (1945) (Murphy, J., concurring) (holding

2

that resident aliens have First Amendment Rights); *Wong Wing v. United States*, 163 U.S. 228, 237 (1896) (holding that resident aliens are entitled to Fifth and Sixth Amendment rights). Moreover, other courts to consider this issue have ruled that resident aliens possess Second Amendment rights. *See, e.g., Fletcher v. Haas*, 851 F. Supp. 2d 287, 301 (D.Mass. 2012); *Foutoudis v. City and County of Honolulu*, No. 1400333 JMS-RLP, 2014 WL 4662385 (D.Haw. Sept. 17, 2014); *Washington v. Ibrahim*, 269 P.3d 292, 296–97 (Wash. App. Div. 3, 2011). Two federal courts have actually ruled that similar, though not identical, statutes violated the Second Amendment. *Fletcher,* 851 F. Supp. 2d. at 304; *Haas*, 2014 WL 4662385 at *5. Additionally, a federal court found that a very similar state statute violated the Fourteenth Amendment's Equal Protection Clause. *Smith v. South Dakota*, 781 F.Supp.2d 886–87 (D.S.D 2011).

No defendant has proffered a strong argument in support of limiting the concealed carry statute to citizens. No defendant objected to plaintiff's characterization in court that resident aliens are allowed to possess firearms on their premises and are even allowed to carry firearms openly in North Carolina. In fact, the Sheriff stated that he agreed with plaintiff that the law at issue in this case was unconstitutional. In light of other court rulings, the law in North Carolina, and defendants' postures in this case, plaintiff has demonstrated that she is likely to succeed on the merits.

The Court further finds that in the absence of preliminary injunctive relief, plaintiff will suffer irreparable harm. The deprivation of a constitutional right, even if only briefly, constitutes irreparable harm. *Dean v. Leake*, 550 F.Supp.2d 594, 602 (E.D.N.C. 2008) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 191 (4th Cir. 2013) (First Amendment); *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011) (First Amendment); *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362

3

(4th Cir. 1991) (Equal Protection). When the harm alleged by a plaintiff is the deprivation of a constitutional right, the likelihood of success on the merits is so "inseparably linked" to the proving of an actual harm that the court may proceed directly to consider the merits of plaintiff's action. *Giovanni Carandola, Ltd. v. Bason,* 303 F.3d 507, 511 (4th Cir. 2002). As plaintiff alleges constitutional harms and has established her likelihood of success on the merits, she has likewise established the existence of irreparable harm based on the infringements of her constitutional rights.

Traditional legal remedies are inadequate to relieve the harm in this case. The inability to carry a concealed firearm for self-defense cannot be quantified by money damages any more than can the experience of being discriminated against solely based on one's citizenship status. In contrast, the harm to defendants if an injunction is granted is virtually nonexistent. Compliance with the law is not a cognizable hardship on a defendant. *Carandola,* 303 F.3d at 521 ("[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.").

Finally, the public interest clearly weighs in favor of any injunction in this case. The public interest lies with protecting Constitutional rights for those who are otherwise law-abiding members of society. Moreover, as plaintiff have shown a likelihood of success on the merits, the public interest lies with preserving the funding and prohibiting what appears to be a violation of the law.

Accordingly, plaintiff has established all four elements showing that she is entitled to the extraordinary remedy of a preliminary injunction. Defendants, their officers, agents, servants, and employees are hereby PRELIMINARILY ENJOINED from:

a. Enforcing the United States citizenship requirement of N.C.G.S. § 14–415.12(a)(1), including against plaintiff;

b. Enforcing any other sections of the North Carolina General Statutes which restrict lawfully admitted aliens', including plaintiff's, firearm rights and privileges based on citizenship.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for preliminary injunction [DE 2] is GRANTED.

SO ORDERED, this 23 day of April, 2015.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE