IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:14-cv-00369-BO

| | |
|---|---|
| FELICITY M. TODD VEASEY and SECOND AMENDMENT FOUNDATION, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| BRINDELL B. WILKINS, JR., in his official Capacity as Sheriff of Granville County, North Carolina, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Felicity M. Todd Veasey and Second Amendment Foundation, Inc. (collectively "Plaintiffs"), by and through counsel and pursuant to Local Rule 7.1(e), file this response in opposition to Defendant's Motion to Dismiss.

### INTRODUCTION AND STATEMENT OF THE CASE

Plaintiffs filed suit under 42 U.S.C. § 1983 against the Defendant in his official capacity as Sheriff of Granville County ("Sheriff"), because the Sheriff denies lawful permanent resident aliens the right to apply for and obtain a Concealed Carry Permit ("CCP"). This is a clear violation of the Equal Protection Clause and the Second Amendment. Because of these plain constitutional violations, Plaintiffs seek injunctive relief requiring the Sheriff to follow the United States Constitution and allow Ms. Veasey and similarly-situated members of Plaintiff Second Amendment Foundation, Inc. ("SAF") to apply for and receive a CCP.

In response, the Sheriff argues that he simply enforces state law, and therefore Plaintiffs have no claims against him. Instead, the Sheriff contends, Plaintiffs should look to the State of North Carolina for relief, despite the fact that the Sheriff has adopted a local policy that

## ARGUMENT

I.  **The Sheriff's denial of a CCP to lawful permanent resident aliens is a plain violation of the United States Constitution.**

Plaintiffs' core complaint in this civil action is the unconstitutionality of denying her a CCP simply because she is not a United States citizen. The Sheriff does not dispute this core principle.[2] Instead, the Sheriff contends that he simply administers and enforces the North Carolina statutes as written and cannot be legally responsible for such conduct, despite his department's plain violation of Plaintiffs' constitutional rights. The Sheriff further contends that the proper party to be sued is the State of North Carolina.

As fully discussed in Plaintiffs' Brief in Support of Motion for Preliminary Injunction, the question of whether lawful permanent resident aliens enjoy Second and Fourteenth Amendment rights is an easy one, because the Supreme Court has ruled that they do. (Mem. Supp. Points and Authorities Pls' Mot. Prelim. Inj. [D.E. 21] pp. 12-20). This case therefore does not turn on whether Plaintiffs' constitutional rights have been violated. They have been. Instead, the issue is whether the Sheriff, in his official capacity, must answer for such violations when his department adopted a policy discriminating on the basis of citizenship and actually refuses to issue CCPs to lawful permanent resident aliens.

II. **The Sheriff's defense that he simply applies North Carolina statutes as written does not absolve the Sheriff of Section 1983 liability.**

Notwithstanding the Sheriff's position that he simply administers and enforces North Carolina law, he is still liable under 42 U.S.C. § 1983 for violating Plaintiffs' constitutional rights. In the first instance, the Sheriff's reliance on cases such as *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) and *Bockes v. Fields*, 999 F.2d 788 (4th Cir. 1993) is misplaced

---

[2] The Sheriff's only argument regarding constitutionality addresses the Second Amendment issue, not the Equal Protection issue. (Mem. Supp. Mot. to Dismiss [D.E. 15], pp. 12-13).

and does not absolve the Sheriff of Section 1983 liability. For example, *Monell* dealt with the twin issues of whether municipalities and local governing boards are "persons" within the meaning of 42 U.S.C. § 1983, and, if so, whether those same entities could be held vicariously liable for the unlawful conduct of their employees. *Id.* at 690-693. In holding that liability could be imposed only where unconstitutional conduct occurred as a result of the implementation or execution of a local policy or custom, the Court emphasized that liability cannot exist "*solely* because [the governing board] employs a tortfeasor—or, in other words, a [governing board] cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). Therefore, *Monell* addressed only vicarious liability, not a county sheriff's implementation of a formal local policy, as in the present case.

The Supreme Court reiterated the limited basis of the "official policy requirement" in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), stating:

> [T]he "official policy" requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action[s] for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"—that is, acts which the municipality has officially sanctioned or ordered.

*Id.* at 479-80. (emphasis in original).

Therefore, both *Monell* and *Pembaur* make clear that the "official policy requirement" doctrine should remain limited to cases involving vicariously liability. And, in any event, the present case is indeed a circumstance that involves "acts which the municipality has officially sanctioned or ordered." *Pembaur,* 475 U.S. at 480.

The Sheriff's reliance on *Bockes* is likewise misplaced, albeit for a different reason. In *Bockes*, the Fourth Circuit addressed Eleventh Amendment immunity for a local board where the state paid liability insurance on behalf of that board. *Bockes,* 999 F.2d at 789-90. Moreover, as

the Fourth Circuit later noted in *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321-22 (4th Cir. 2009), the "local" board that enjoyed Eleventh Amendment immunity in *Bockes* was subject to complete control by the state. *Id.* ("Beyond this limited appointment power, municipalities have no control over the operations of local social services boards or departments.") Therefore, when the *Bockes* Court spoke of the local board being constrained by state law and therefore not liable under 1983, it was applying that principle to a state-controlled entity. This is plainly not the same as a North Carolina's sheriff's department, which is entirely separate from the state, adopting and applying a formal local policy. *Bockes* therefore has no bearing on the present case.

Moreover, *Vives v. The City of New York*, 524 F.3d 346 (2d Cir. 2008), cited by the Sheriff, demonstrates that an issue of fact arises as to whether Sheriff Wilkins has truly done nothing more than apply state statutes, and a Rule 12 dismissal is therefore not appropriate. In *Vives*, the Second Circuit reversed a summary judgment ruling and specifically noted questions of fact that would have to be addressed on remand. Therefore, if Sheriff Wilkins maintains his position that he was simply applying North Carolina statutes as written, then Plaintiffs in discovery must delve into whether the Sheriff had a "meaningful choice" regarding enforcement of the state statutes, whether his department adopted a discrete policy enforcing those statutes, and whether the Sheriff has the authority to instruct his department not to enforce portions of the state statutes. *See Vives*, 524 F.3d at 353-54.

*Vives* is also instructive in light of Sheriff Wilkins' official policy that a CCP "Applicant must be: A citizen of the United States of America." In *Vives*, local law enforcement officers enforced state law by arresting the plaintiff and citing him for violation of state law. The municipality had not adopted any official policy touching on the constitutional violations of

which the plaintiff complained. By contrast, Sheriff Wilkins has indeed adopted a formal local policy, as stated plainly on his website (See Exhibit A, attached hereto).

The holding in *Davis v. City of Camden*, 657 F. Supp. 396 (D.N.J. 1987), is therefore more instructive than any cases upon which the Sheriff relies. In *Davis*, the Court held a municipality liable for enforcing an unconstitutional state statute because the municipality had adopted a policy in accordance with state law. Specifically, the municipality adopted and enforced a strip search policy that was mandated by a state regulation. *Id.* at 398. That state regulation was later declared unconstitutional, and the municipality attempted to escape liability by arguing that "because this policy was mandated by a state regulation the policy was not a 'county policy' as contemplated by *Monell* and its progeny, but a *state* policy that county officials merely enforced; and that accordingly, the County cannot be held liable under § 1983 for plaintiff's damages." *Id.* at 402. (emphasis in original). The Court flatly rejected this argument. Discussing *Monell* and cases that have applied its holding, the *Davis* Court concluded that Section 1983 liability arises when a municipality "officially adopts a policy that subsequently is declared unconstitutional, notwithstanding the fact that the policy was mandated by state law." *Id.*

In the present case, Sheriff Wilkins has expressly adopted a policy that prohibits anyone but US citizens from obtaining a CCP. And, while the Sheriff points to the State of North Carolina to absolve his department of liability, the fact remains that the Sheriff's department has adopted, implemented, and enforces an official policy that unconstitutionally discriminates against lawful permanent resident aliens. Blaming the state for such a policy simply does not absolve the Sheriff's department of liability.

wm-iw-app_IWOVRIC_26731492_2.DOCX

7

Case 5:14-cv-00369-BO Document 23 Filed 11/10/14 Page 7 of 14
Case 5:15-cv-00097-BO Document 35-1 Filed 05/19/15 Page 5 of 8

Finally, the premise of Sheriff Wilkins' core argument—essentially that his department is "just following orders" when it adopts and enforces a policy known to violate the Constitution—should be rejected. Federal courts have repeatedly addressed this premise in the context of personal liability for Section 1983 violations, and the courts have rejected this premise where, as here, the constitutional violation is clear. For example, in *Davis*, the Court noted:

> Finally, the argument that municipal liability should not attach when municipal officials effectuate a state mandated policy because the officials had no choice but to implement the policy can be met with the observation that not only do these officials have such a choice, but they may be obliged not to implement the state law if they wish to avoid personal liability under § 1983. Municipal officials cannot blindly implement state laws; they are required to independently assess the constitutionality of the laws and, although they will be protected if their assessment, albeit incorrect, was objectively reasonable, they will be held personally liable if they should have known that the law was unconstitutional.

*Davis*, 657 F. Supp. at 404.

Likewise, in *Snider v. Peters*, 928 F. Supp. 2d 1113 (E.D. Mo. 2013), the plaintiff sued, received a declaration and injunction against state law, and received an award of damages against a local police officer. The plaintiff sought fees against the officer under 42 U.S.C. § 1988, who argued that he should not be liable for fees because he was just enforcing a state statute. *Id.* at 1119. The Court rejected this argument, stating "governmental officials are not bound to follow state law when that law is itself unconstitutional. Quite the contrary: in such a case, they are bound not to follow state law." *Id.* (quoting *Carhart v. Steinberg*, 192 F.3d 1142, 1152 (8th Cir. 1999)). *See also O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004).

While *Davis* and *Snider* addressed the "just following orders" defense in the context of personal liability, and while Sheriff Wilkins is sued only in his official capacity, the principle applied in *Davis* and *Snider* holds true in this case. The Sheriff simply cannot avoid liability for his department when his department actually has violated Plaintiffs' constitutional rights, and

wm-iw-app_IWOVRIC_26731492_2.DOCX

8

Case 5:14-cv-00369-BO   Document 23   Filed 11/10/14   Page 8 of 14
Case 5:15-cv-00097-BO   Document 35-1   Filed 05/19/15   Page 6 of 8

this is especially true because the Sheriff's department has a formal local policy of discriminating against lawful permanent resident aliens. The Sheriff's defense therefore must be rejected, and his motion should be denied.

III. **The Sheriff's 12(b)(7) motion should be denied because he cites no authority for the premise that the State is a necessary party, and the State is otherwise not a necessary party in an action where the Sheriff's policy resulted in the constitutional violation.**

The Sheriff's argument for dismissal due to the absence of a necessary party is limited to a generic discussion of the principles of Federal Rules of Civil Procedure 12(b)(7) and 19, with a brief mention of the inability to join a state as a party due to Eleventh Amendment immunity. However, the Sheriff does not, and indeed cannot, cite any case that was dismissed simply because a local government blames a state government for implementation of policy by that local government.

The Sheriff cannot escape the undisputed fact that he adopted a local policy that discriminates against lawful permanent resident aliens. The Sheriff may blame state law as the reason for this policy, but ultimately his Department's policies and actions are at issue. Moreover, the statutes governing CCPs, N.C. Gen. Stat. §§ 14-415.11 through 14-415.27, make clear that a county sheriff is the only government actor that implements and enforces the CCP statutes. *See* N.C. Gen. Stat. § 14-415.11(b). Because Sheriff Wilkins is the designated government official who enforces the discriminatory and unconstitutional statute at issue, and no actor of the State of North Carolina is involved, the Court should reject the Sheriff's argument pursuant to *Ex Parte Young*, 209 U.S. 123 (1908) that Plaintiffs should (or even could) have filed suit against a State official in federal court. Plaintiffs have complied with the applicable rule and given the State notice of this action, and it is now presumably up to the State's officials whether

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety.

Respectfully submitted this 10th day of November, 2014.

          WILLIAMS MULLEN

          BY: */s/ Camden R. Webb*
          Camden R. Webb
          N.C. State Bar No. 22374
          crwebb@williamsmullen.com
          P. O. Box 1000
          Raleigh, North Carolina 27602
          Telephone: (919) 981-4000
          Facsimile: (919) 981-4300
          *Local Counsel for Plaintiffs*

          LAW FIRM OF DAVID G. SIGALE, P.C.

          BY: */s/ David G. Sigale*
          IL Bar No. 6238103
          dsigale@sigalelaw.com
          799 Roosevelt Road, Suite 207
          Glen Ellyn, IL 60137
          Telephone: (630) 452-4547
          Facsimile: (630) 596-4445
          *Counsel for Plaintiffs*
          *Admitted Pro Hac Vice*