# EXHIBIT C



# HOUSE BILL 562:
# Amend Firearm Laws

This Bill Analysis reflects the contents of the bill as it was presented in committee.

*2015-2016 General Assembly*

| | | | |
|---|---|---|---|
| **Committee:** | Rules, Calendar, and Operations of the House | **Date:** | June 8, 2015 |
| **Introduced by:** | Reps. Schaffer, Burr, Cleveland, Faircloth | **Prepared by:** | Susan Sitze |
| **Analysis of:** | Fourth Edition | | Committee Counsel |

***SUMMARY:*** *The Proposed Committee Substitute for House Bill 562 would amend various firearms laws.*

**BILL ANALYSIS:**

**Section 1** would amend the exemptions to carrying a concealed weapon to allow DAs with a concealed handgun permit to carry a concealed handgun in a courtroom. This section would also add certain DPS employees (8) and Administrative Law Judges (9) who have concealed handgun permits to the list of exemptions, which would allow them to carry concealed handguns in some places the average person cannot, including courtrooms, assemblies where a fee is charged, etc. This section would allow a person to carry a pocket knife in a closed position into the State Capitol Building. Finally, this section would authorize legislators and legislative employees who have concealed handgun permits to carry concealed in State legislative buildings and grounds.

**Section 2** would allow a person with a concealed handgun permit to carry concealed on their person within a locked vehicle on educational property and would allow a person within a locked vehicle on educational property to move a handgun from concealment on their person to a closed compartment and vice versa even if momentarily it is not concealed.

**Section 3** would provide an affirmative defense to possession of handgun on educational property if the person was authorized to have a handgun in a locked vehicle and removed the handgun from the vehicle only in response to a threatening situation in which deadly force was justified to defend self or others pursuant to G.S. 14-51.3.

**Section 4** would authorize the Commissioner of Agriculture to prohibit the carrying of firearms on the State Fairgrounds during the State Fair. Law enforcement officers would be exempted, and persons with concealed handgun permits would still be authorized to have a handgun in their locked vehicle. This section also directs the Department of Agriculture, in consultation with the Department of Public Safety and the North Carolina Sheriffs' Association to study a method to allow persons to store handguns at the entrance to the State Fairgrounds.

**Section 5** would expand the shooting range protection act to provide that shooting ranges are only subject to noise ordinances that were in effect at the time the shooting range began operation and do not have to comply ordinances adopted later if there has been no substantial change in use.

**Section 6** would modify the firearm rights restoration statute to ensure recognition of the restoration by federal law.

*O. Walker Reagan*
*Director*



*Research Division*
*(919) 733-2578*

*This bill analysis was prepared by the nonpartisan legislative staff for the use of legislators in their deliberations and does not constitute an official statement of legislative intent.*

# House Bill 562
*Page 2*

**Section 7** would eliminate some misdemeanors from the list of misdemeanor convictions that prohibit a person from obtaining a concealed handgun permit. This section would also make most misdemeanor convictions only count against a person for 3 years and stalking convictions count for 5 years in relation to prohibiting them from obtaining a concealed handgun permit. Domestic violence convictions and convictions for assault on a law enforcement officer would remain a prohibiting conviction permanently.

**Section 8** would authorize the use of short-barreled rifles for hunting.

**Section 9** would reduce the offense of carrying a concealed handgun on private posted property from a Class 1 misdemeanor to an infraction and authorize a fine of up to $500.

**Section 10** would repeal the pistol purchase permit requirement effective October 1, 2021 and would make the following changes to the pistol purchase permit statutes pending that repeal:
- Beginning October 1, 2018, allow a NICS check when purchasing a pistol from a federally licensed firearm dealer in lieu of a pistol purchase permit or a concealed carry permit.
- Specify the sheriff may only consider an applicant's conduct or criminal history for the past five years when determining "good moral character".
- Change the appeal of a denial of a permit from a singular appeal to the chief district court judge in that district to an appeal to the superior court.
- Require the Department of Public Safety, in consultation with the North Carolina Sheriffs' Association, to develop a permit application form and require all sheriffs to use that form. The specific things an applicant can be require to provide would be set forth and specifically states that the applicant cannot be required to provide any additional document or evidence.
- Require a person or entity presented with a mental health release form to promptly provide court orders concerning the mental health or capacity of the applicant.

**Section 11** would make the following changes:
- Specify the information to be collected and reported to NICS for background checks and would require certain information to be transmitted to NICS by the clerk no later than 48 hours after receiving notice.
- Require pistol permit applications and concealed handgun permit applications to be provided electronically.
- Prohibit the sheriff from requesting additional information for concealed handgun permit applications unless specifically authorized by statute.
- Require arresting law enforcement agencies to fingerprint persons charged with certain misdemeanors and forward those fingerprints to NICS
- Direct AOC to use Court Technology Funds to comply with the NICS reporting requirements.

**Section 12** would expand statewide uniformity of firearm regulation to specifically prohibit local governments from adopting any regulation relating to taxation, manufacture, or transportation of firearms. This section would also allow a person to bring an action for declaratory and injunctive relief against a local government that violates the section by adopting a regulation in violation of the law.

**Section 13** would require certain State officials authorized by federal law to complete certifications required by federal law for transfer of certain weapons to complete those certifications within 15 days of request.

# House Bill 562
*Page 3*

**Section 14** would require a sheriff to make the request for any records concerning the mental health of an applicant for a concealed handgun permit within 15 days of receipt of the permit application and prohibit denial of the permit unless the applicant is determined to be ineligible pursuant to statute.

**Section 15** would amend G.S. 14-415.23, which limits local government regulation of carrying concealed handguns to allow a person to bring an action for declaratory and injunctive relief against the local government for violation of the statute.

**Section 16** would require any written questionnaire or other written form a health care provider asks a patient to complete that contains any question regarding the patient's lawful ownership, possession, handling, storage, maintenance of, or other conduct involving firearms and ammunition to clearly and conspicuously contain or have attached to it a notice that the patient is not required to answer those questions.

**Section 17** would authorize a permanent resident of the United States to obtain a North Carolina concealed handgun permit.

**EFFECTIVE DATE:** Subsections (a), (b), and (c) of Section 1, and Sections 2, 3, 8, and 9 of this act become effective July 1, 2015, and apply to offenses committed on or after that date. Section 5 of this act becomes effective July 1, 2015, but shall not apply to pending litigation. Section 6 of this act is effective when it becomes law and applies to restorations granted before, on, or after that date. Section 7 of this act becomes effective July 1, 2015, and applies to permit applications submitted on or after that date. Subsections (a) and (b) of Section 10 of this act become effective October 1, 2021, and apply to offenses committed on or after that date. Subsection (c) of Section 10 of this act becomes effective October 1, 2018. Subsection (d) of Section 10 of this act becomes effective December 1, 2015, and apply to offenses committed on or after that date. Sections 12 and 15 of this act become effective December 1, 2015, and apply to violations occurring on or after that date. Section 13 of this act becomes effective July 1, 2015. Section 14 becomes effective October 1, 2015, and applies to applications submitted on or after that date. Section 16 of this act becomes effective October 1, 2015. The remainder of this act is effective when it becomes law. Prosecutions for offenses committed before the effective date of this act are not abated or affected by this act, and the statutes that would be applicable but for this act remain applicable to those prosecutions.